## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NATIONAL PARKS CONSERVATION )
ASSOCIATION, )
           )
       Plaintiff, )
           )
and )
           )
COALITION TO PROTECT AMERICA'S )
NATIONAL PARKS, INC. )
5625 North Wilmot Road )
Tucson, Arizona 85750-1216, )
           )
JONATHAN B. JARVIS )
2575 Samuel Street, )
Pinole, California 94547, )
           )
and )
           )
AMERICAN RIVERS, INC. )
1101 14th Street NW, Suite 1400 )
Washington, D.C. 20005, )
           )
       Proposed Amici Curiae, )
           )
       v. )       Civ. Action No. 1:17-CV-1361-RCL
           )
TODD T. SEMONITE, Lieutenant General, )
U.S. Army Corps of Engineers, et al., )
           )
       Federal Defendants, )
           )
and )
           )
VIRGINIA ELECTRIC AND POWER CO., )
           )
       Intervenor-Defendant. )

**MOTION OF PROPOSED *AMICI CURIAE* COALITION TO PROTECT AMERICA'S NATIONAL PARKS, INC., FORMER 18TH DIRECTOR OF THE NATIONAL PARK SERVICE JONATHAN B. JARVIS, AND AMERICAN RIVERS, INC. FOR LEAVE TO FILE AMICUS BRIEF IN SUPPORT OF PLAINTIFF NATIONAL PARKS <u>CONSERVATION ASSOCIATION'S MOTION FOR PRELIMINARY INJUNCTION</u>**

Pursuant to Local Rule 7(o)(1), Coalition to Protect America's National Parks, Inc. ("Coalition"), Former 18th Director of the National Park Service Jonathan B. Jarvis, and American Rivers, Inc. ("American Rivers") hereby respectfully move this Court for leave to file the proposed amicus curiae brief attached as Exhibit A in support of Plaintiff National Parks Conservation Association's ("NPCA") motion for preliminary injunction.[1]  ECF No. 5.  The Court should grant the Movants' motion for leave to file their proposed brief because they meet the criteria of Local Rule 7(o)(1) governing the filing of amicus curiae briefs.

First, the Coalition and American Rivers have strong interests in this case, as they submitted multiple comments to the Corps on the proposed Surry-Skiffes Creek-Whealton Transmission Line Project ("Project") at issue in this case, which involves the construction of a transmission line with 17 towers as large as the Statute of Liberty in and across the James River near Historic Jamestowne Island—one of America's most precious historic places and a unit of the National Park System since 1936.  Likewise, Proposed Amicus Curiae and Former NPS Director Jonathan B. Jarvis sent letters to the Corps on the Project as the then-18th Director of the National Park Service.  The Coalition and Former Director Jarvis also have strong interests in these appeals because the Project will have significant adverse impacts to the resources and values for which multiple units of the National Park System that they work to preserve and protect were established, and the case raises issues of System-wide importance.  American Rivers also has a strong interest in these appeals because the Project threatens its longstanding goal of securing the listing and protection of the segment of the James River near Historic

---

[1] Consistent with Local Rule 7(o)(2), on August 13, 2017, Movants conferred with the parties before filing their motion.  On August 14, 2017, Movants shared a copy of the motion with Federal Defendants and Intervenor Defendant Virginia Electric and Power Company at their request.  Plaintiff supports the motion.  Federal Defendants have yet to provide their position on the motion.  Intervenor-Defendant opposes the motion.

Jamestowne under the Wild and Scenic Rivers Act, for which it is eligible because it is listed on the Nationwide Rivers Inventory administered by NPS.

The Movants' proposed brief is desirable and their positions in the brief are not adequately represented by any party because the proposed brief focuses on many important factual and legal issues not raised and developed fully in Plaintiff's brief that are relevant to the central issue in this case—whether the Corps violated the National Environmental Policy Act ("NEPA") in failing to prepare an Environmental Impact Statement ("EIS") for the Project. These issues include the following: (1) the "special expertise" of NPS under NEPA, the Wild and Scenic Rivers Act, and the non-impairment mandate of the NPS Organic Act in evaluating adverse impacts to and impairment of the resources and values of units of the National Park System and river segments listed on the Nationwide Rivers Inventory ("NRI"); (2) the Corps' failure to pay attention to and use NPS's analyses and findings that the Project will have significant adverse impacts to the resources and values for which Colonial National Historic Park ("NHP"), the Captain John Smith Chesapeake National Historic Trail ("NHT"), and other NPS units were established that constitute impairment under the NPS Organic Act and cannot be mitigated; and (3) the Corps' failure to pay attention to and use NPS's analyses and consistent findings that the Project will have significant adverse impacts to the "outstandingly remarkable" historic values for which the segment of the James River at issue was listed on the NRI and its failure to consider whether such impacts could prevent this segment from qualifying for inclusion in the national wild and scenic rivers system.  These issues and other matters in the proposed brief are relevant, as they show that the Corp's Finding of No Significant Impact and decision not to prepare an EIS is arbitrary and capricious and contrary to NEPA.

Finally, this motion will not unduly delay the Court's ability to rule on NPCA's pending motion for preliminary injunction, or interfere with the current briefing schedule, because Movants filed it before the oppositions of Defendants to the motion are due and five weeks before the hearing on the motion scheduled for September 20, 2017.  ECF No. 14.

## LEGAL STANDARD

Under Local Rule 7(o)(1) the Court has discretion to grant a motion for leave to file a proposed amicus curiae brief where the movant demonstrates: (1) "the nature of the movant's interest" and the party supported by the movant; (2) "why an amicus brief is desirable, why the movant's position is not adequately represented by a party, and why the matters asserted are relevant to the disposition of the case"; and (3) that the motion "does not unduly delay the Court's ability to rule on any pending matter."  *See Cobell v. Norton*, 246 F. Supp. 2d 59 (2003) (Lamberth, J.) ("an amicus brief should normally be allowed when . . . the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide"); *Hard Drive Productions, Inc. v. Does 1–1,495*, 892 F. Supp. 2d 334 (2012) (Bates, J.) (finding "proposed [amicus curiae] brief helpful because it raise[d] an issue not developed fully in the motions . . . filed by defendants").

A district court should "grant motions for leave to file amicus briefs unless it is obvious that the proposed briefs do not meet [the same] criteria [as Local Rule 7.1(o)(1)] as broadly interpreted."  *Neonatology Assocs., P.A. v. I.R.S.*, 293 F.3d 128, 133 (3d Cir. 2002) (Alito, J.) (stating that this position is "consistent with the predominant practice in the [federal] courts of appeals") (quoting Michael E. Tigar & Jane B. Tigar, Federal Appeals—Jurisdiction and Practice 181 (3d ed. 1999) ("Even when the other side refuses to consent to an amicus filing, most courts of appeal freely grant leave to file, provided the brief is timely and well-reasoned.").

## ARGUMENT

**I.     MOVANTS HAVE STRONG INTERESTS IN THIS CASE BECAUSE THE PROJECT WILL HAVE SIGNIFICANT ADVERSE IMPACTS TO NPS UNITS THAT THEY WORK TO PROTECT, RAISES ISSUES OF SYSTEM-WIDE IMPORTANCE, AND THREATENS THEIR GOAL OF PROTECTING THE JAMES RIVER UNDER THE WILD AND SCENIC RIVERS ACT.**

With respect to the interest requirement the local rule, an amicus curiae does not need to be impartial to the outcome of the case since the local rule "requires that an amicus have an 'interest' in the case." *Neonatology Assocs.*, 293 F.3d at 133.  Indeed, even if partial to the outcome of the case, "an amicus who makes a strong but responsible presentation in support of a party can truly serve as the court's friend." *Id*.  As discussed below, the Coalition, Former NPS Director Jarvis, and American Rivers have strong interests in this case because the Project will have significant adverse impacts to NPS units that they work to protect, the case raises issues of system-wide importance, and the Project threatens their goal of protecting the historic James River under the Wild and Scenic Rivers Act.

### A.     The Coalition to Protect America's National Parks, Inc. And Former 18th Director Of The National Park Service Jonathan B. Jarvis

The Coalition to Protect America's National Parks, Inc. and Former 18th Director of the National Park Service Jonathan B. Jarvis seek to join this case as amici curiae because of the significance of the issues presented to the National Park System on a nationwide basis.

With more than 1,400 members, the Coalition consists entirely of retired NPS officials from every level, including former: directors; associate and regional directors; superintendents; rangers, and specialists with expertise in subject matter areas such as the National Park Service Organic Act, National Environmental Policy Act ("NEPA") compliance, historic and cultural resource preservation and management, and American history and prehistory.  The Coalition's members include a former superintendent of Colonial National Historic Park and several former

officials at this park.  This exceptional group of NPS experts, all of whom serve on a volunteer

basis, formed the Coalition in 2003 to advance the "preservation and protection of America's

national park areas" and "the central mission of the National Park Service."  Art. of Inc.,

Coalition, arts. II & III (2006), *available at* www.protectnps.org.  The central mission of NPS is

found in the conservation and non-impairment mandates of the NPS Organic Act discussed

below.  The Coalition "collectively represents nearly 30,000 [now 35,000] years of professional

stewardship experience in protecting America's most precious and important natural and historic

places."  Ex. B at 1.  The Coalition is a "partner" with NPS on several programs, and it

collaborates with NPS on a continuing basis.  Since its establishment, the Coalition has found it

necessary to fulfill its mission through litigation on only four occasions.[2]  In each case, the issues

that necessitated Coalition involvement threatened the integrity of the National Park System.

A native of Shenandoah Valley, Virginia, Jonathan B. Jarvis served as the 18th Director

of the National Park Service from September 2009 to January 2017 when he retired from federal

service.  Prior to serving as Director, Former NPS Director Jarvis served as Regional Director of

NPS for the Pacific West Region and superintendent of several NPS units, including Mount

Ranier National Park, Craters of the Moon National Monument, and Wrangell-St. Elias National

---

[2] *See Garfield County v. United States*, No. 20150335, 2017 WL 3187505 (Utah July 26, 2017) (amicus curiae in case concerning rights-of-way asserted by the State of Utah through national parks and monuments under an 1866 mining statute); *Nat'l Parks Conservation Ass'n v. U.S. Dep't of the Interior*, 835 F.3d 1377 (11th Cir. 2016) (amicus curiae in case concerning management of Big Cypress National Preserve Addition affirming that under the NPS Organic Act "[NPS] decisions that fail to promote conservation over recreation run contrary to the express directives of Congress and cannot be upheld"); *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073 (9th Cir. 2013) (amicus curiae in successful defense of NPS decision to terminate use of Point Reyes National Seashore and designated wilderness areas by a commercial shellfish farm); *Brady Campaign to Prevent Gun Violence v. Salazar*, 612 F. Supp. 2d 1 (D.D.C. 2009) (co-plaintiff in obtaining preliminary injunction against the repeal of regulations prohibiting concealed weapons in National Park System units).

Park & Preserve (the largest NPS unit).  From serving as a seasonal interpreter in the year of our nation's bicentennial to managing NPS through its centennial in 2016, Former NPS Director Jarvis has tremendous knowledge of the national treasures managed by NPS including Historic Jamestowne; vast experience in NEPA and National Historic Preservation Act compliance, the non-impairment mandate of the NPS Organic Act, the NPS Wild and Scenic Rivers and Nationwide Rivers Inventory Programs, and historic and cultural resource preservation and management; and a deep understanding of special expertise of NPS in evaluating adverse impacts to and impairment of park resources and values and potential wild and scenic river segments.  Former Director Jarvis earned a B.S. in Biology from the College of William & Mary located in Historic Williamsburg a few miles from Historic Jamestowne and the James River.

Notably, as NPS Director during the Corps' consideration of the proposed Project at issue in this case, Former Director Jarvis is intimately familiar with the repeated failure of the Corps to pay attention to and use NPS's science-based analyses and consistent findings on the Project. Indeed, in December 2015, Director Jarvis sent a letter to the Commanding General of the Corps in which he stated that the Project which he described as "one of the most serious threats to our nationally significant historic resources" would cause "severe and unacceptable damage" to the "historic setting" of Colonial NHP and the Captain John Smith Chesapeake NHT, which setting "has survived intact for over 400 years" and "is integral to being able to understand each and their connection to each other."  ECF No. 5-22 at 3.  In this letter, Director Jarvis also stated that "no amount of mitigation could possibly counteract the severity of the effects that would be caused by this proposal" to Colonial NHP and the Captain John Smith Chesapeake NHT and "urge[d] the [Corps] to further examine the many other solutions available through an [EIS]." *Id*.

In the view of the Coalition and Former NPS Director Jarvis, this case challenging the Corps' approval of the construction of dozens of transmission towers as tall as the Statue of Liberty and covered with red blinking lights across the James River near Jamestown Island—one of America's most precious historic sites—also presents issues of System-wide importance. These issues include: (1) the significance of adverse impacts to the resources and values of national historic parks, trails, and landmarks from modern visual intrusions; (2) violations of the NPS Organic Act by the Corps and other federal agencies through authorizing activities that are exercised in derogation of the values and purposes for which NPS units have been established; and (3) deference to NPS's special expertise in evaluating adverse impacts to and impairment of park and river resources and values under the NPS Organic Act and Wild and Scenic Rivers Act.

The Coalition and Former Director Jarvis agree with Plaintiff that NEPA requires that the Corps prepare an EIS on the Surry-Skiffes Creek-Whealton Transmission Line Project ("Project"). However, the Coalition's distinct focus in this brief is the failure of the Corps as required by NEPA and its implementing regulations to pay attention to and use NPS's special expertise, analyses, and findings that: (1) the Project will cause significant adverse impacts to the resources and values for which Colonial NHP and the Captain John Smith Chesapeake NHT were established that constitute impairment under NPS Organic Act; (2) because the mere presence of the towers in this historic segment of the James River cause such impairment the "mitigation measures" cannot reduce the adverse impacts to park resources and values to the requisite minimum; and (3) the Project will also have significant adverse impacts on the "outstandingly remarkable" historic values for which this segment of the James River was listed on the NRI.

### B.      American Rivers, Inc.

American Rivers, Inc. seeks to join this case as an amicus curiae because the Project threatens the tremendous historic, cultural, scenic, and natural resources and values of the James River.   American Rivers has worked for years to protect and restore the James River, which is "America's Founding River" and the hub of a collection of protected parks, trails, and landmarks including the first permanent settlement in what became the 13 colonies and the nation's first (and thus far, only) congressionally-designated historic water trail.  As currently configured, the Project will mar the scenic viewsheds of these protected sites, thereby undermining the very purpose of historic preservation for which they were established.  American Rivers was founded in 1974 for the express purpose of advocating for vigorous implementation of the Wild and Scenic Rivers Act.  Since then, American Rivers has been involved in virtually every wild and scenic designation, protecting more than 10,000 river miles and over 3 million acres of riverside habitat.  As the nation's leading proponent of the Wild and Scenic Rivers Act, American Rivers has a particular interest in ensuring that the Project does not impair the values that led to the James River's listing on the NRI.

With more than 275,000 members, supporters, and volunteers, American Rivers works to protect wild rivers, restore damaged rivers, and conserve clean water for people and nature. Since its founding, American Rivers has protected and restored more than 150,000 miles of rivers through advocacy efforts, on the ground projects, and an annual America's Most Endangered Rivers Campaign.  In 2016 alone, American Rivers worked with local communities to remove 16 dams, restore more than 921 miles of river through dam removal or dam reoperation, and remove more than 2.4 million pounds of trash from rivers with the help of more than 43,000 volunteers.

Members, supporters, and volunteers of American Rivers have been active for many years in local efforts, and have worked for years, to restore and protect the James River.  For example, for years American Rivers has contributed to the James River Regional Cleanup during which hundreds of volunteers roam the shorelines of the James River on foot and cruise the water in boats to clean up trash, an effort that is a tremendous benefit to the river, its wildlife, and the people who visit and enjoy the James River.  In addition, for years, American Rivers has worked with federal and state agencies, dam owners, and others to remove dams from and re-open tributaries of the James River to migratory fish such as the endangered Atlantic Sturgeon—the food source that saved the first permanent English colony in America at Jamestown.

American Rivers joins this case because the Project threatens American River's longstanding goal of securing the listing and protection of this segment of the James River near Historic Jamestowne under the Wild and Scenic Rivers Act, for which its eligibility was established by its inclusion in the Nationwide Rivers Inventory.  In addition, construction of 17 transmission towers in the James River in designated critical habitat for the endangered Atlantic sturgeon will be a setback to the efforts of American Rivers to re-open the James River to and conserve this endangered prehistoric species.  American Rivers' distinct focus in this brief is the Corps' failure to prepare an EIS despite severe adverse impacts that the Project will have on the outstandingly remarkable historic, cultural, and scenic values of this segment of the James River on which designation under the Wild and Scenic Rivers Act would be based.

Therefore, the Coalition, Former NPS Director Jarvis, and American Rivers have strong interests in this case, as they submitted comments on the Project to the Corps, and the Project will adversely impact the National Park System and a segment of the James River on the Nationwide Rivers Inventory that they work to preserve and protect.

**II.    THE POSITIONS AND MATTERS IN MOVANTS' PROPOSED BRIEF ARE DESIRABLE, NOT ADEQUATELY REPRESENTED BY ANY PARTY, AND RELEVANT BECAUSE THEY ARE NOT RAISED OR DEVELOPED FULLY IN PLAINTIFF'S BRIEF AND RELATE TO THE CENTRAL ISSUE IN THE CASE.**

With respect to the local rule's "criterion of desirability," for which "a broad reading is prudent," amicus curiae briefs are desirable to the Court when, for example, they: (1) "collect background or factual references that merit judicial notice"; (2) share "particular expertise not possessed by any party to the case"; (3) "argue points deemed too far-reaching for emphasis by a party intent on winning a particular case"; or (4) "explain the impact a potential holding might have." *Neonatology Assocs.*, 293 F.3d at 132 (citation omitted); *see Cobell v. Norton*, 246 F. Supp. 2d 59 (2003) (Lamberth, J.) ("an amicus brief should normally be allowed when . . . the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide"); *Hard Drive Productions, Inc. v. Does 1–1,495*, 892 F. Supp. 2d 334 (2012) (Bates, J.) (finding "proposed [amicus curiae] brief helpful because it raise[d] an issue not developed fully in the motions . . . filed by defendants").  The matters asserted in a proposed brief are "relevant" to the disposition of a case where they are: (1) "closely related to the legal issues presented in th[e] [case]," or (2) "alert[] the [court] to possible implications of the [case]." *Neonatology Assocs.*, 293 F.3d at 133.

The central issue in this case is whether the Corps violated NEPA, the statutory framework of which Plaintiff's brief discusses.  However, also of relevance to compliance with NEPA (and whether it requires preparation of an EIS here) is whether the Corps' FONSI is in tension with and/or violates other environmental protection statutes and Movants' proposed brief discusses in detail two such statutes, the NPS Organic Act and the Wild and Scenic Rivers Act, and their related NEPA regulations.

The Movants' proposed brief discuss in detail the special expertise of NPS under the non-impairment mandate of the NPS Organic Act and the Wild and Scenic Rivers Act in evaluating adverse impacts to and impairment of the resources and values of units of the National Park System and river segments listed on the Nationwide Rivers Inventory. *See* Ex. A at 6–8, 17, 23. The background and references in proposed brief on the NPS Organic Act are barely covered in Plaintiff's brief. *See* ECF No. 5-1 at 17 (two-sentence discussion of NPS Organic Act). Likewise, Plaintiff's brief does not discuss at all the Wild and Scenic Rivers Act and the Nationwide Rivers Inventory issues concerning this segment of the James River which Movants' proposed brief discusses. *See generally id*. Further, Plaintiff's brief does not discuss the provisions of NEPA, the CEQ NEPA regulations, or NPS NEPA procedures concerning a lead agency's duty to consider the comments of agencies with "special expertise," which are discussed in the proposed brief. *See generally* Ex. A.

To understand the significance of the Project's impacts to the segment of the James River listed on the Nationwide Rivers Inventory and the adjacent NPS units it is critical to understand the purposes, resources, and values for which they have been established and protected. Plaintiff's brief does not fully discuss the purposes, values, and resources for which these units of the National Park Service were established and are managed. In contrast, Movants' proposed brief provides detailed background, references, and discussion of the relevant establishment acts and management plans for these units. *See* Ex. A at 8–10.

Further Movants' proposed brief explains how the Corps failed to pay attention to and use NPS's analyses and consistent findings that the Project will have significant adverse impacts to the purposes, resources, and values for which Colonial National Historic Park, the Captain John Smith Chesapeake National Historic Trail, and other NPS units were established that

constitute impairment under the NPS Organic Act and cannot be mitigated.  Plaintiff's brief does

not discuss several important analyses and findings prepared and sent by NPS to the Corps

including NPS's science-based analysis of adverse impacts from the Project to these NPS units

and NPS's analysis in partnership with Argonne National Laboratory of the flaws in Dominion's

visual analysis.  *See* Ex. A at 12, 12; *see also* Ex. E (Mar. 25, 2016 letter from NPS to the

Corps).  Further, Plaintiff's brief does "not develop fully," *Hard Drive Productions*, 892 F. Supp.

2d at 334, the issue of NPS's findings that the Project will impair these units of the National Park

System to the point that the enjoyment of them by future generations will be unacceptably

impaired within the meaning of the NPS Organic Act.  *See* ECF No. 5-1 at 17 (two-sentence

discussion of NPS Organic Act).  These issues are relevant because, as the proposed brief

discusses, impacts to park resources and values are environmental impacts, *see* Ex. A at 17, and

courts have held that NEPA requires preparation of an EIS where a proposed action adjacent to a

NPS unit would impair park resources and values.  *See* Ex. A at 16.

Moreover, the Movants' proposed brief explains the Corps' failure to pay attention to and

use NPS's analysis and findings that the Project will have significant adverse impacts to the

"outstandingly remarkable" historic values for which the segment of the James River at issue

was listed on the NRI.  The proposed brief also explains the Corps' failure to consider whether

such impacts could prevent this segment from qualifying for inclusion in the national wild and

scenic rivers system.  Plaintiff's brief does not address the Wild and Scenic Rivers Act and

Nationwide Rivers Inventory issues.  Yet, these issues are relevant because, as the proposed brief

explains, Wild and Scenic Rivers Act, NEPA, a Presidential Directive, and CEQ NEPA

regulations require that agencies to consult with NPS and prepare an EIS where a proposal

"could have" significant adverse effects on a river in the Inventory because such effects could downgrade portions of the Inventory or foreclose wild and scenic river status.  Ex. A at 22–25.

In summary, the foregoing matters, which are not raised or developed fully in Plaintiff's, brief but are in Movants' proposed brief are relevant because they show that the Corps' Finding of No Significant Impact is arbitrary and capricious and contrary to NEPA because it does not accurately identify the relevant environmental concerns, take a "hard look" at the problem, make a convincing case for its finding, and/or show that even if there is an impact of true significance, the mitigation measure sufficiently reduces the impact to a minimum.  Therefore, the positions and matters in Movants' proposed brief are desirable, not adequately represented by any party, and relevant.

### III.   THE MOVANTS' MOTION DOES NOT UNDULY DELAY THE COURT'S ABILITY TO RULE ON THE PENDING MOTION BECAUSE MOVANTS FILED IT BEFORE DEFENDANTS' RESPONSES TO THE MOTION FOR PRELIMINARY INJUNCTION ARE DUE AND WELL IN ADVANCE OF THE HEARING ON THE MOTION FOR PRELIMINARY INJUNCTION.

As noted above, Local Rule 7(o)(1) governing the filing of amicus curiae briefs requires the a proposed amicus curiae file its motion for leave so that it "does not unduly delay the Court's ability to rule on any pending matter."

Here, the Coalition, Former NPS Director Jarvis, and American Rivers have filed their motion for leave and the accompanying proposed brief multiple days before Defendants' responses in opposition to the motion for preliminary injunction are due on August 18, 2017.  In addition, Movants filed their motion for leave and proposed brief well in advance of (more than five weeks before) the Court's hearing on the motion for preliminary injunction on September 20, 2017.

Therefore, the Coalition's motion for leave and proposed brief does not or interfere with the current briefing schedule or unduly delay the Court's ability to rule on the pending motion for preliminary injunction.

## **CONCLUSION**

For the foregoing reasons, the Court should grant the motion of Coalition to Protect America's National Parks, Inc., Former 18th Director of the National Park Service Jonathan B. Jarvis, and American Rivers, Inc. for leave to file the proposed amicus curiae brief attached as Exhibit A in support of Plaintiff's motion for preliminary injunction.  Pursuant to Local Rule 7(o)(2), a proposed order for the Court's consideration accompanies this motion.

Respectfully submitted,

Dated: **August 16, 2017**                    /s/ Tyler J. Sniff
                                              Tyler J. Sniff
                                              D.C. Bar No. 1022155
                                              STACK & ASSOCIATES, P.C.
                                              260 Peachtree Street, Suite 1200
                                              Atlanta, Georgia 30303
                                              Telephone: (404) 525-9205
                                              Facsimile: (404) 522-0275
                                              E-mail: tsniff@stack-envirolaw.com

                                              *Counsel for Proposed Amici Curiae*
                                              *Coalition to Protect America's National*
                                              *Parks, Inc. Former 18th Director of the*
                                              *National Park Service Jonathan B. Jarvis,*
                                              *and American Rivers, Inc.*

### CERTIFICATE OF SERVICE

I hereby certify that on **August 16, 2017**, I electronically filed the foregoing using the

Court's CM/ECF system and thus also served the foregoing on all counsel of record.


Dated: **August 16, 2017**                    **/s/ Tyler J. Sniff**_____
                                               Tyler J. Sniff
                                               D.C. Bar No. 1022155
                                               STACK & ASSOCIATES, P.C.
                                               260 Peachtree Street, Suite 1200
                                               Atlanta, Georgia 30303
                                               Telephone: (404) 525-9205
                                               Facsimile: (404) 522-0275
                                               E-mail: tsniff@stack-envirolaw.com