**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NATIONAL PARKS CONSERVATION ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| and | ) ) | |
| COALITION TO PROTECT AMERICA'S NATIONAL PARKS, INC., | ) ) ) | |
| JONATHAN B. JARVIS, | ) ) | |
| and | ) ) | |
| AMERICAN RIVERS, INC., | ) ) | |
| Proposed Amici Curiae, | ) ) | |
| v. | ) ) | Civil Action No. 1:17-cv-1361-RCL |
| TODD T. SEMONITE, Lieutenant General, U.S. Army Corps of Engineers, et al., | ) ) ) | **HEARING REQUESTED** |
| Federal Defendants, | ) ) | |
| and | ) ) | |
| VIRGINIA ELECTRIC & POWER COMPANY, | ) ) | |
| Intervenor-Defendants. | ) ) | |

**REPLY IN SUPPORT OF MOTION OF COALITION TO PROTECT AMERICA'S NATIONAL PARKS, INC., FORMER 18TH DIRECTOR OF THE NATIONAL PARK SERVICE JONATHAN B. JARVIS, AND AMERICAN RIVERS, INC. FOR LEAVE TO FILE THEIR PROPOSED *AMICI CURIAE* BRIEF**

Federal Defendants and Intervenor-Defendant oppose the Motion of the Coalition to Protect America's National Parks, Inc., Former 18th Director of the National Park Service Jonathan B. Jarvis, and American Rivers, Inc. ("Movants") for leave to file their Proposed *Amici*

*Curiae* Brief ("Proposed Brief"). *See* Proposed Br., ECF No. 20-1. Defendants' efforts to shield the Court from reviewing a highly pertinent brief from relevant content experts demonstrates the obvious—that they do not want the Court to hear from Movants precisely because they have unique professional experience in evaluating adverse impacts to the resources and values of NPS units and river segments listed on the Nationwide Rivers Inventory ("NRI"), including those at issue in this very case. Specifically, Movant Jonathan B. Jarvis was the Director of NPS while the Project was under active consideration by the Corps, the Coalition consists entirely of retired, former, and current NPS officials (including a former superintendent of Colonial National Historic Park), and American Rivers has been involved in virtually every wild and scenic river designation since it was founded in 1973. Movants are exactly the types of persons who should—and routinely *do*—qualify as *amici curiae* in this and other federal courts, and Defendants' discomfort with Movants' expert views is *not* a valid justification for denying them *amici curiae* status in this case.

Rather than contest Movants' interests and expertise in this case, Defendants attempt to confuse the Court by mischaracterizing the arguments in their Proposed Brief as raising "new substantive claims" and issues under the NPS Organic Act and Wild and Scenic Rivers Act that "do not address . . . the preliminary injunction test." Fed. Defs.' Resp. at 1, ECF No. 32; Intervenor-Def.'s Resp. at 9, ECF No. 31. However, as discussed below, the Proposed Brief does not raise new substantive claims or issues, but rather provides additional development of arguments directly raised by NPCA's Complaint and preliminary injunction papers arguing that NPCA is likely to succeed on the merits of its claim that the Corps violated NEPA. In particular, consistent with NPCA's position in this case, the Proposed Brief argues that the Corps' Finding of No Significant Impact ("FONSI") violates NEPA because it fails to pay attention to, let alone

use to the maximum extent possible, analyses and findings made by NPS in its special expertise that the Project will impair the resources and values of NPS units in violation of the NPS Organic Act and diminish the outstandingly remarkable historic values of the segment of the James River listed on the NRI under the Wild and Scenic Rivers Act.  These contentions are directly relevant to NPCA's primary argument in this case, i.e., that the Corps violated NEPA by failing to prepare an Environmental Impact Statement ("EIS") even though the Project implicates several of the NEPA "significance" factors.  Indeed, as the CEQ NEPA regulations expressly require, the Corps in evaluating whether a Project's adverse impacts are significant, must consider as one of these factors "whether the action threatens a violation of federal . . . laws . . . imposed for the protection of the environment," 40 C.F.R. § 1508.27(b)(10), including the NPS Organic Act and Wild and Scenic Rivers Act.  Thus, fuller development of these issues by Movants with expertise on these resources is desirable and relevant to the Court's determination of whether the Project triggers any significance factors and requires preparation of an EIS.  Defendants' apparent position that the only appropriate *amicus curiae* brief is one that merely parrots the arguments in NPCA's brief for why the FONSI violates NEPA is illogical and contrary to *amicus curiae* practice in the Supreme Court and the D.C. Circuit.

      Defendants also argue that the Motion for Leave is untimely because it was not filed seven days after NPCA's motion for preliminary injunction, but Local Rule 7(o)(2) does not contain such a deadline.  Instead, it only requires the filing of the Motion for Leave so that it does not "unduly delay" the Court's ability to rule on the pending motion for preliminary injunction.  The Motion and Proposed Brief plainly satisfy this standard because they were filed just two days after the Court approved an expedited briefing schedule for the case, more than five weeks before the hearing on the motion for preliminary injunction, and are now fully briefed

two weeks before the hearing.  The timing of the Motion and Proposed Brief did not unfairly prejudice Defendants as they received a copy of the Motion four (4) days before their responses to NPCA's motion for preliminary injunction were due yet they did not even attempt to address the arguments in the Motion for Leave in their responses and instead chose to waste the time and resources of all involved by forcing the Court to rule on this Motion for Leave.

The Court should deny Defendants' request for leave to file an opposition to the Proposed Brief because they had 14 days to file a proposed opposition with their response to the Motion for Leave but failed to do so and Local Rule 7(o)(2) prohibits further briefing on the Motion and Proposed Brief.  Further, Defendants in their responses have already stated their views on the relevance of the arguments in the Proposed Brief, and thus the Court can consider such views and give Movants' arguments in their Proposed Brief whatever weight it desires.  There is no justification to delay the schedule and hearing simply to give Defendants another opportunity to argue why they think the arguments in the Proposed Brief are irrelevant.

Finally, Intervenor-Defendant argues that the Proposed brief "misstates basic law and facts."  Intervenor's Resp. at 8–9, ECF No. 31.  However, as discussed below, Intervenor-Defendant in fact mischaracterizes Movants' arguments, the record, and case law.

For these reasons, the Court should grant the Motion and consider the Proposed Brief.

I.      **THE PROPOSED BRIEF PROVIDES ADDITIONAL DEVELOPMENT OF NPCA'S ARGUMENTS THAT NPCA IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIM THAT THE CORPS VIOLATED NEPA.**

Defendants main argument against the Motion for Leave is that the Proposed Brief purportedly "introduce[s] new substantive claims" and issues under the NPS Organic Act and Wild and Scenic Rivers Act that "do not address . . . the preliminary injunction test." Fed. Defs.' Resp. at 1, ECF No. 32; Intervenor-Def.'s Resp. at 9, ECF No. 31.  This argument is an attempt

to confuse the Court by mischaracterizing the arguments in the Proposed Brief. As discussed below, the Proposed Brief does not raise new substantive claims or issues, but rather provides fuller development of arguments directly raised by NPCA, i.e., whether the NEPA significance factors require preparation of an EIS, which Movants provided to the Corps in dozens of letters throughout the decision-making process.

Under NEPA's implementing regulations promulgated by the Council on Environmental Quality ("CEQ")—upon which NPCA explicitly relies in its Complaint and preliminary injunction papers in arguing that this Project required preparation of an EIS—there are ten (10) factors that "should be considered" by responsible officials in evaluating whether a proposal's adverse impacts are "significant." 40 C.F.R. § 1508.27 (b)(1)–(10). **One of these factors is "whether the action threatens a violation of federal, state, or local law or requirements imposed for the protection of the environment."** *Id*. **at § 1508.27(b)(10)**; *see Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 374 n.20 (1989) (quoting 40 C.F.R. § 1508.27(b)(10)); *Sierra Club v. Van Antwerp*, 661 F.3d 1147, 1155 (D.C. Cir. 2011). Federal courts permit *amici curiae* in NEPA cases to argue that a FONSI is arbitrary and capricious because it fails to consider one of the ten significance factors not raised or developed fully by the plaintiff. *E.g.*, *Public Citizen v. Dep't of Transp.*, 316 F.3d 1002, 1026 (2003), *rev'd on other grounds* 541 U.S. 752 (2004) (adopting arguments by *amicus curiae* that FONSI was arbitrary and capricious because it failed to consider under 40 C.F.R. § 1508.27(b)(10) "whether its regulations *might* violate [state air quality] rules," a significance factor not raised by plaintiffs).

In the present case, both the Motion and Proposed Brief recognize that the "central issue in this case is whether the Corps violated NEPA." Mot. for Leave at 10, ECF No. 20; Propsoed Brief at 6, ECF No. 20-1. Intervenor-Defendant admits that "NPCA's brief focuses on . . .

whether the Corps properly evaluated each of the [ten] 'significance' factors under the NEPA regulations issued by the . . . CEQ." Intervenor-Def.'s Resp. at 3, ECF No. 31. Consistent with 40 C.F.R. § 1508.27(b)(10), both the Motion and Proposed Brief clearly state that "also of relevance to compliance with NEPA (and whether it requires preparation of an EIS here) is whether the Corps' FONSI is in tension with and/or violates other environmental protection statutes and Movants' proposed brief discusses in detail two such statutes, the NPS Organic Act and the Wild and Scenic Rivers Act, and their related NEPA regulations." Mot. for Leave at 10, ECF No. 20; Proposed Br. at 6, ECF No. 20-1. Specifically, the Proposed Brief argues that the Corps' FONSI violates NEPA because:

> [I]t does not pay attention to and/or use the findings of NPS—the agency with special expertise—that: (1) the Project's adverse impacts to the resources and values for which Colonial NHP, the Captain John Smith Chesapeake NHT, and other NPS units were established rise to the level of impairment under the NPS Organic Act, and (2) such significant adverse impacts cannot be reduced to a minimum through mitigation measures because the mere presence of the towers in this historic segment of the James River constitutes impairment.

Proposed Br. at 15. The Proposed Brief also argues that the FONSI violates NEPA because "it does not pay attention to, let alone use, the analyses and consistent findings of NPS that the Project will have significant adverse effects on the historic values of the segment of the James River [placed] on the Nationwide Rivers Inventory [under the Wild and Scenic Rivers Act] which cannot be mitigated." Proposed Br. at 22. Thus, contrary to Defendant's argument that "Movants . . . do not address . . . the preliminary injunction test," Intervenor-Def.'s Resp. at 9, ECF No. 31, the Proposed Brief clearly supports NPCA's argument that it is likely to succeed on the merits of its claim that the Corps' FONSI and failure to prepare an EIS violate NEPA.

Defendants incorrectly argue that Plaintiff NPCA does not rely on NPS's findings that the Project will impair park resources and values under the NPS Organic Act "as bases for the

Corps' alleged violations of NEPA in its motion for a preliminary injunction." Fed. Defs.' Resp. at 4, ECF No. 32.  As Defendants admit in their Responses, *see id.* at 4, NPCA raises this argument in its brief, *see* NPCA's Mem. at 17, 29, ECF No. 5-1, but does not fully develop it. The Proposed Brief assists the Court by "develop[ing] fully" this argument using "unique information [and] perspective," *Hard Drive Production, Inc. v. Does 1–1,495*, 892 F. Supp. 2d 334 (2012); *Cobell v. Norton*, 246 F. Supp. 2d 59 (2003), including additional record evidence and the experience of serving as Director of NPS while the Project was under active consideration by the Corps.  *See* Proposed Br. at 15–21, ECF No. 20-1.

Likewise, NPCA's brief also discusses the Project's impacts on the "unique and highly scenic section of the James River" listed on the NRI.  NPCA's Mem. at 25, 32 n.8, ECF No. 5-1. However, NPCA's brief does not fully explain, as does the Proposed Brief, that such impacts necessitate preparation of an EIS because this river section is listed on the NRI and such impacts "could [therefore] prevent the segment from qualifying for inclusion in the [national wild and scenic rivers] system" under the Wild and Scenic Rivers Act.  *See* Proposed Br. at 22–25, ECF No. 20-1.  Movants provide unique perspective on this issue.  For example, American Rivers has been involved in virtually every wild and scenic river designation since it was founded in 1973. Mot. for Leave at 8, ECF No. 20.  Federal Defendant's assertion, *see* Fed. Defs.' Resp. at 22, ECF No. 20-1, that this argument is not relevant because this segment of the James River is not a designated wild or scenic river but only on the NRI misses the point.  As the Proposed Brief discusses in detail, NEPA, the CEQ NEPA regulations, the Wild and Scenic Rivers Act, and a 1979 Presidential Directive all indicate that the Corps must prepare an EIS for the Project because the construction of a new transmission line where none currently exists will introduce visual intrusions that are out of character with the outstandingly remarkable historic values of

this segment of the James River on the NRI, which could foreclose wild and scenic river status. Proposed Br. at 22–25, ECF No. 20-1.

Defendants' apparent position is that the only appropriate *amicus curiae* brief is one that merely parrots the arguments in NPCA's brief for why the FONSI violates NEPA, a position which is illogical and contrary to *amicus curiae* practice in the Supreme Court and the D.C. Circuit. *See White v. Illinois*, 502 U.S. 346, 352 (1992) ("We consider as a preliminary matter an argument not considered below but urged by the United States as *amicus curiae* in support of respondent."); *Eldred v. Ashcroft*, 255 F.3d 849, 852 (D.C. Cir. 2001) (Sentelle, J., dissenting) ("A new 'argument' is not a new 'issue.'  This is clear from our circuit's rules.  Specifically, an amicus brief 'must . . . focus on points not made or adequately elaborated upon in the principal brief, although relevant to the issues before the Court.'") (quoting D.C. Cir. L.R. 29(a)); *Wallaesa v. FAA*, 824 F.3d 1071, 1078 (D.C. Cir. 2016), ("Raising new *arguments* is one thing—raising new *issues* is entirely another").

For reasons discussed above, the Proposed Brief clearly does not improperly raise "new substantive claims" and issues but rather properly provides additional development of Plaintiff NPCA's arguments that support the position that NPCA is likely to succeed on the merits of its claim that the Corps' actions violated NEPA.

II. **THE MOTION IS NOT UNTIMELY UNDER THE LOCAL RULES BECAUSE IT WILL NOT "UNDULY DELAY" THE COURT'S ABILITY TO RULE ON THE PENDING MOTION FOR PRELIMINARY INJUNCTION.**

Intervenor-Defendant argues that Movants should have filed their Motion and Proposed Brief on July 31, 2017, seven (7) days after NPCA filed its motion for preliminary injunction, rather than August 16, 2017, because Federal Rule of Appellate Procedure 29(a)(6) states that

8

"[a]n amicus curiae must file its brief . . . no later than 7 days after the principal brief of the party being supported is filed." *See* ECF No. 31 at 9.

Local Rule 7(o)(2) does not contain such a deadline for the filing of amicus curiae briefs. Instead, it merely states that "the motion [for leave] shall be filed in a timely manner such that it does not ***unduly delay*** the Court's ability ***to rule on any pending matter***." This "unduly delay" standard is akin to the standard in Federal Rule of Civil Procedure 24(b), which does not contain a specific deadline for the filing of motions for permissive intervention but rather requires the Court to consider whether such a motion "will unduly delay . . . the adjudication of the original parties' rights." Here, the Motion and Proposed Brief were filed more than five weeks before the hearing on the motion for preliminary injunction on September 20, 2017. In addition, the Motion is now fully briefed more than two weeks before this hearing. As such, the Motion plainly does not unduly delay the Court's ability to rule on the pending motion for preliminary injunction.

Defendants argue that the timing of the Motion and Proposed Brief unfairly prejudiced them. Intervenor-Def.'s Resp. at 11, ECF No. 31. However, Movants sent Defendants a copy of the Motion summarizing their arguments on Monday, August 14, 2017, a full four (4) days before Defendants' responses were due. *See* Ex. J, E-mail from T. Sniff to Counsel for Defs. (Aug. 14, 2017), ECF No. 35-1. In addition, Movants diligently filed their Motion on August 16, 2017, just two days after the Court approved an expedited briefing schedule for the case. *See* Order, ECF No. 14. Yet, Defendants did not even attempt to address the arguments raised in the Motion in their responses in opposition to NPCA's motion for preliminary injunction despite having four full days to do so. Instead, they chose to waste the time and resources of everyone by forcing the Court to rule on the Motion for Leave.

Alternatively, Defendants request "14 days, including rescheduling of the current hearing date" to respond to the arguments in the Proposed Brief. Fed. Defs.' Resp. at 6, ECF No. 32; Intervenor-Def.'s Resp. at 12, ECF No. 31 (requesting until September 15, 2017). However, Local Rule 7(o)(2) required Defendants to "concisely stat[e] the reasons for [their] opposition" to the Proposed Brief in their responses to the Motion due on August 30, 2017. Defendants had 14 days to file a proposed response to the Proposed *Amici Curiae* Brief with their responses to the Motion for Leave but they failed to do so. Likewise, Local Rule 7(o)(2) prohibits further briefing on the Motion and Proposed Brief "unless otherwise ordered by the Court."

Notwithstanding this, in their responses to the Motion, Defendants have already stated their views on the relevance and persuasiveness of the arguments in the Proposed Brief. Accordingly, the Court can consider such views and give Movants' arguments in their Proposed Brief whatever weight it desires. **There is no justification to delay the schedule and hearing simply to give Defendants a second opportunity to argue that the arguments in the Proposed Brief are irrelevant or unpersuasive.** In fact, Intervenor-Defendant's Response lists purported misstatements of law and fact in the Proposed Brief that, as demonstrated below, are in fact mischaracterizations of Movants' arguments, the record, and case law.

### III. DEFENDANT, IN ASSERTING THAT THE PROPOSED BRIEF MISTATES THE LAW AND FACTS, MISCHARACTERIZES MOVANTS' ARGUMENTS, THE ADMINISTRATIVE RECORD, AND CASE LAW.

Finally, Intervenor-Defendant argues that the Proposed Brief "unhelpful because it misstates basic law and facts." Intervenor-Def.'s Resp. at 8, ECF No. 31. Specifically, Intervenor-Defendant states that: (1) "despite Movant's argument, the NPS Organic Act and NPS guidance do not apply to the Corps"; (2) "although Movants claim 25 towers will be visible from Carter's Grove [National Historic Landmark] based on NPS documents, NPS itself

acknowledges that the actual number of visible towers is no more than 3"; (3) "Movants . . . erroneously impl[y] that the Corps permit may affect a designated Wild and Scenic River"; and (4) "a mere listing on NPS's Nationwide Rivers Inventory 'does not purport to impose any obligations on federal agencies.'" *Id*. at 9.  As discussed below in turn, each of these statements by Intervenor-Defendant attempts to confuse the Court by mischaracterizing Movants' arguments, the administrative record, and case law.

Intervenor-Defendants are incorrect that the NPS Organic Act does not apply and/or is not relevant to the Corps' authorization of the Project.  Section 100101(b)(2) of the NPS Organic Act "does not limit the prohibition on the authorization of activities that are exercised in derogation of the values and purposes for which units have been established to only authorizations by NPS or only activities within parks."  Proposed Br. at 7, ECF No. 20-1.  Even if the "non-derogation" mandate of Section 100101(b)(2) does not apply to all agencies, which by its plain language it does, the NPS Organic Act is still relevant to this case.  As discussed above, under the CEQ NEPA regulations, the Corps in evaluating whether the Project's adverse impacts are "significant" should consider "whether the action *threatens* a violation of federal . . . law . . . imposed for the protection of the environment" including the NPS Organic Act.  40 C.F.R. § 1508.27(b)(10) (emphasis added).  The Corps' own regulations implementing NEPA incorporate the definition of "significantly" in 40 C.F.R. § 1508.27(b) by reference.  *See* Definitions, 33 C.F.R. § 230.4 ("Refer to 40 C.F.R. part 1508").  **As the Proposed Brief argues, NPS repeatedly found that the Project will cause such "severe and unacceptable damage" to multiple NPS units that it will impair the enjoyment of them by future generations, which means that if NPS were the lead agency it: (1) could not and would not allow the Project to move forward because, regardless of mitigation measures, authorization of the**

**Project violates the NPS Organic Act, and (2) would require preparation of an EIS.** *See* **Proposed Br. at 10–12, 15–21, ECF No. 20-1. These findings by NPS are strong evidence that the Project, at the very least, threatens violations of the NPS Organic Act and that the Corps violated NEPA by not preparing an EIS.**

In addition, Movants do not argue, as Intervenor-Defendant claims, that the NPS Management Policies and NPS NEPA Handbook discussed in the Proposed Brief are binding on the Corps. Rather, the Proposed Brief discusses these authorities because they indicate how and where NPS, in its "special expertise," finds that a proposal is expected to or has the potential to impair park resources and values and thus requires preparation of an EIS—findings which NEPA requires the Corps to pay attention to and use to the "maximum extent possible." Proposed Br. at 16–17, ECF No. 20-1.

Second, NPS did not state, as Intervenor-Defendant argues, that only three (3) towers will be visible from Carter's Grove NHL. ECF No. 31 at 8. Intervenor-Defendant cites to a letter from NPS to the Corps in which NPS questions the reliability of a "line of sight" analysis by Intervenor-Defendant's consultant, which found that only two towers would be visible *"from the main house"* on Carter's Grove Plantation NHL when a "more definitive" analysis using the "tethered balloon approach" found that three towers would be visible "from the main house." *See* Ex. 11 at 85–87, ECF No. 23-12. As the Proposed Brief correctly states, NPS's science-based analysis of visual impacts found that given existing vegetation, **25 of the 44 towers** would be visible *from the grounds* of Carter's Grove NHL. *See* Proposed Br. at 11, ECF No. 20-1; Ex. K at 16, ECF No. 5-14. NPS has never retracted this finding and Intervenor-Defendant's own consultant found that "nearly all of structures located within the river crossing, ranging in height from 177 feet to 297 feet would be visible from the shoreline [of Carter's Grove [NHL]," that at

least 10 of these towers "require lighting," and that the Project would adversely impact "the integrity of setting, a primary characteristic associated with the Carter's Grove NHL property." Ex. 11 at 86, ECF No. 23-12.

Third, Movants do not "impl[y] that the Corps permit may affect a designated Wild and Scenic River," as Defendants argue. Intervenor-Def.'s Resp. at 9, ECF No. 31. The Proposed Brief very clearly states that the Project will adversely impact a segment of the James River on the Nationwide Rivers Inventory, which is "a list of river segments that are eligible for protection under the [Wild and Scenic] River Act" because they are "free flowing and ha[ve] one or more 'outstandingly remarkable values.'" Proposed Br. at 8, ECF No. 20-1.

Finally, Intervenor-Defendant's argument that "a mere listing on NPS's Nationwide Rivers Inventory 'does not purport to impose any obligations on federal agencies,'" Intervenor-Def.'s Resp. at 9, ECF No. 31, is false and based on a gross misrepresentation of the holding in *Hughes River Watershed Conservancy v. Glickman*, 81 F.3d 437 (4th Cir. 1996). In *Glickman*, the court simply held that the Wild and Scenic Rivers Act does not require an agency to evaluate the benefits of designating a river segment listed on the NRI as part of the National Wild and Scenic River System ***as an alternative to building a Project***. *See id*. at 450. The court very explicitly did not decide whether Section 1276(d)(1) of the Act imposes a mandatory duty on all federal agencies to consider and discuss the potential of a NRI-listed river segment on which a project is proposed to be included in the System. *Id*. at 449–50. Instead, the court, "assuming *arguendo*" that the Act imposes such a duty, found that the Corps complied with such duty because, unlike in the present case, it "consulted with NPS" and prepared an EIS that "explained that [a dam] project w[ould] inundate 3.4 miles of [a NRI-listed river segment] and that such inundation w[ould] eliminate the potential of that 3.4 miles to be included in the System." *Id*.

13

As the Proposed Brief discusses in detail, NEPA, the CEQ NEPA regulations, Section 1276(d)(1) of the Wild and Scenic Rivers Act, and the 1979 Presidential Directive do in fact impose an obligation on the Corps to "consult with NPS and prepare an EIS where a proposal 'could have' significant adverse effects on a river in the Inventory because such effects could downgrade portions of the Inventory or foreclose wild and scenic river status." *See* Proposed Br. at 22–25, ECF No. 20-1.

The Proposed Brief argues that, unlike in *Glickman*, in the present case the Corps did not comply with this obligation because it failed to "pay attention to, let alone use, the analyses and consistent findings of NPS that the Project will have significant adverse effects on the historic values of the segment of the James River on the [NRI] which cannot be mitigated." *Id*. at 22. In fact, in a letter "on the NRI aspects of th[e] Project," NPS stated that the Corps is subject to such obligations and found that "given the potentially significant impacts to free flow, along with natural and cultural ORVs ["outstandingly remarkable values"] for this project the NPS recommends that the . . . Corps . . . follow the [CEQ] procedures which prescribe preparation of an Environmental Impact Statement (EIS) if the effects on a NRI-listed river could be significant." Ex. K, Letter from NPS to Corps at 3 (June 29, 2015), ECF No. 35-2; *see also* Proposed Br. at 23, ECF No. 20-1 (noting that NPS stated in another letter that all the "impacts noted . . . for the various historic properties from [the Project] would represent a significant adverse effect on the outstandingly remarkable historic values for which this segment of the James River is listed on the NRI") (quoting ECF No. 5-13 at 13). The Proposed Brief also argues that, unlike in *Glickman*, in the present case the Corps did not comply with this obligation because "nowhere does the FONSI discuss whether an intrusion upon a unique and highly scenic

14

section of the segment of the James River on the NRI could prevent the segment from qualifying for inclusion in the national wild and scenic rivers system." Proposed Br. at 24, ECF No. 20-1.

Thus, the Proposed Brief does not misstate the law or facts.

### CONCLUSION

For the foregoing reasons and those stated in their Motion, the Court should grant Movant's motion for leave to file their Proposed *Amici Curiae* Brief. Should the Court grant Defendants leave to file a response in opposition to the Proposed Brief, Movants respectfully request that the Court: (1) limit such a response to one combined brief of no more than 15 pages; (2) permit Movants to file a reply of no more than 10 pages in support of their arguments; and (3) permit Movants/Proposed *Amici Curiae* to participate briefly in the oral argument on September 20, 2017, pursuant to Local Rule 7(o)(6), to argue their Motion and their views in the Proposed Brief.

Respectfully submitted,

Dated: **September 6, 2017**         **/s/ Tyler J. Sniff**
Tyler J. Sniff
D.C. Bar No. 1022155
STACK & ASSOCIATES, P.C.
260 Peachtree Street, Suite 1200
Atlanta, Georgia 30303
Telephone: (404) 525-9205
Facsimile: (404) 522-0275
E-mail: tsniff@stack-envirolaw.com

*Counsel for Proposed Amici Curiae Coalition to Protect America's National Parks, Inc.. 18th Director of the National Park Service Jonathan B. Jarvis, and American Rivers, Inc.*

**CERTIFICATE OF SERVICE**

    I hereby certify that on **September 6, 2017**, I electronically filed the foregoing using the Court's CM/ECF system and thus also served the foregoing on all counsel of record.

Dated: **September 6 2017**           **/s/ Tyler J. Sniff**
                                                               Tyler J. Sniff
                                                               D.C. Bar No. 1022155
                                                               STACK & ASSOCIATES, P.C.
                                                               260 Peachtree Street, Suite 1200
                                                               Atlanta, Georgia 30303
                                                               Telephone: (404) 525-9205
                                                               Facsimile: (404) 522-0275
                                                               E-mail: tsniff@stack-envirolaw.com